WILLIAM KRÆUTLER and another *v.* THE PRESIDENT, DIRECTORS AND COMPANY OF THE BANK OF THE UNITED STATES.

The evidence of a witness who states, that he verily believes that notice of the neglect or refusal of the acceptor to pay a bill at maturity was given to the drawer, but does not say how it was given, nor assign any reason for his belief, nor state any fact from which the court may judge of the sufficiency of the notice, is not sufficient proof of notice.

A non-resident may appeal at any time within two years from the day on which final judgment was rendered; and where the plaintiffs allege in their petition and affidavit for an attachment, that the defendants reside out of the State, they will be concluded thereby.

APPEAL from the Commercial Court of New Orleans, *Watts*, J.

GARLAND, J. The plaintiffs, as holders, sue on an inland bill of exchange, purporting to have been drawn in London, by S. Jaudon, attorney of the Bank of the United States, to his own order, on the 22d of October, 1841, on Gen. C. F. Mercer, attorney of the Union Bank of Florida, then in London. The bill is for £7,215 sterling, accepted by the drawee, payable at the house of the plaintiffs, on the 1st May, 1842. The bill was not paid at maturity, and the plaintiffs allege that it was duly presented for payment, protested, and that notice was given to the drawer. They also allege that the said drawer and endorser were not entitled to the notice of protest, as the defendants had no funds in the hands of the acceptor, at the place of payment, to meet the bill, nor had the drawer authority to draw said bill. The petition, after other allegations, prays for an

attachment, the citation of various garnishees, and for a judgment for the amount of the bill or draft, with interest and damages. The answer of the defendants is a general denial of all the allegations. The garnishees also answered, but it is not now necessary to notice what they say.

On the part of the plaintiffs, the depositions of two witnesses residing in London, were offered. Huston, one of them, who is a clerk of the plaintiffs, swore that he had examined the copy of a bill of exchange annexed to the commission, drawn by S. Jaudon, attorney for the Bank of the United States, and accepted by Mercer, attorney of the Union Bank of Florida, "and that he doth believe verily, payment of the same was demanded of the said acceptors, on the 4th day of May, 1842, at the counting house of the plaintiffs, by a notary public, or by his clerk ; that he doth verily believe, protest for non-payment of the said bill, was duly made by the said James Comerford, notary," &c. That with reference to the question of notice of dishonor and protest of said bill, " he believes that the drawers thereof were made acquainted with the dishonor thereof at the time, or, if not, yet they subsequently waived such notice, and admitted their liability to the amount of the said bill," because, he says, the plaintiffs have in their possession, a letter, known to him (witness) to be in the proper hand-writing of the said Samuel Jaudon, signed by him, dated sometime after the said bill became due, and addressed to plaintiffs, wherein, Jaudon states that, " shortly after I wrote to you in February, I went to New Orleans, when I received a letter from Col. Gamble, to whom I had written on the subject of the debt of his bank in London, informing me that Gen. Mercer had left Tallahassee, on his way to London, where he would see all the parties interested, and give them full explanations about the means and prospect of payment. It appeared to me, therefore, unnecessary for me to write you respecting your advances to the Union Bank of Florida, guarantied by the Bank of the United States, (meaning and thereby intending, as this deponent believes verily, amongst other things, the said bill for £7,215), as I could add nothing to what General Mercer could say. From the Bank of the United States there is no prospect of any dividend for a long time. I am,

therefore, most desirous that some satisfactory arrangement should be made by the Union Bank, and most cheerfully will I give all the aid in my power towards accomplishing this object." The witness further states, that before, and down to the end of November, 1841, Jaudon acted, and was well known in London, as the general agent and attorney of the Bank of the United States, and Mercer was also well known as the general agent of the Union Bank of Florida. The bill, with others, was given to secure the plaintiffs for an advance or loan made, or to be made by the plaintiffs to the Union Bank.

Boyle, the other witness, swears that, as the clerk of Comerford, the notary, he demanded payment of the bill; but he does not know whether any notice was given to the drawers and endorsers of the protest. He further says, that the laws of England in relation to bills of exchange are generally correctly stated in the treatise of Mr. Chitty on that subject.

We have stated fully all the evidence which the voluminous record contains, in relation to the drawing, endorsing, acceptance and delivery of said bill, and the notice of protest. It is unnecessary to state all the other matters detailed by the garnishees, and the evidence in relation to them, as we are satisfied that the judgment appealed from must be reversed.

There is no principle of law better settled than the one which declares, that the holder of a bill of exchange must, to enable him to recover against the drawer, prove a notice having been given to the latter of the neglect or refusal of the acceptor to pay the bill at maturity, or that some of the causes which excuse a want of notice really exist. In the case before us, there is not sufficient evidence of notice to the drawer, nor any proof of the case being an exception to the general rule. The clerk of the notary says, that he made the demand of payment, but he does not know whether any notice of protest was given or not. Huston, the plaintiffs' clerk, says he "verily believes" that notice was given, but he does not state any reasons for his belief, nor say in what manner it was given. He states no fact upon which we can form an opinion as to the sufficiency of the notice. It may be true, as the witness "verily believes," that a notice was given, yet it may have been given in an illegal man-

ner, or at an improper time, and be insufficient to bind the drawer. We have often said that we expect witnesses to state facts, not opinions. If they do state their belief, the circumstances and *data* must be given, that the court may judge whether the belief is well founded, reasonable and probable.

The attempt to prove a promise, since the maturity of the bill, to pay it, has entirely failed. In the first place, the letter alluded to by the witness contains no promise to pay at all, and, if it did, it is not shown that Jaudon, at the date of it, had any authority to bind the bank. According to the plaintiffs' witnesses, his authority expired in November, 1841. The bill was not payable until 1st—4th May, 1842, and the pretended promise was subsequent to that date.

We can only account for a judgment being given for the plaintiffs upon such testimony, by supposing that the attention of the court below was never particularly called to it; and that the numerous other questions which the case presented with other parties, kept the real merits out of view as between the original parties.

The plaintiffs' counsel has moved to dismiss the appeal taken by the defendants, on the ground that one year had elapsed from the date of the same. It is shown by the record, that the bank is a non-resident, being a corporation located in another State, and has, under art. 593 of the Code of Practice, a right to appeal within two years. This answer to the motion to dismiss, appears to us conclusive. The plaintiffs, in their petition and affidavit, say that the President, Directors and Company of the bank reside out of the State of Louisiana, and on that ground claim an attachment against them. They cannot now recal their allegations, and deprive the appellants of their right to appeal.

It is, therefore, ordered and decreed, that the judgment of the Commercial Court be annulled and reversed, and ours is in favor of the defendants as in case of non-suit; the plaintiffs paying the costs in both courts.

*Peyton* and *I. W. Smith*, for the plaintiffs.

*T. Slidell*, for the appellants.